IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THE COMPLIANCE SOURCE, INC. and DIGITAL DOCS, INC.<br><br>    Plaintiffs<br><br>v.<br><br>GREENPOINT MORTGAGE FUNDING, INC.<br><br>    Defendant;<br>_____<br><br>GREENPOINT MORTGAGE FUNDING, INC.<br>    Counterclaim Plaintiff<br><br>v.<br><br>THE COMPLIANCE SOURCE, INC. and DIGITAL DOCS, INC.<br><br>    Counterclaim Defendants;<br>_____<br><br>and<br><br>GREENPOINT MORTGAGE FUNDING, INC.<br><br>    Third-Party Plaintiff<br><br>v.<br><br>NOE NAVA, et al.<br><br>    Third-Party Defendants.<br>_____ | CAUSE NO. 3:06CV1057-AH<br><br>REFERRED TO THE U.S. MAGISTRATE JUDGE |

**PLAINTIFFS THE COMPLIANCE SOURCE AND DIGITAL DOCS, INC.'S REPONSE TO GREENPOINT MORTGAGE FUNDING INC.'S MOTION TO STRIKE THE SUPPLEMENTAL REPORT OF PLAINTIFFS' EXPERT KEITH R. UGONE**

## TABLE OF CONTENTS

Table of Authorities .................................................................................................. iii

I. Plaintiffs' Supplemental Expert Report Should Be Allowed Because Defendant Intentionally Withheld Critical Information Regarding its Relationship with MSYB ........ 2

    A. Defendants Have Intentionally Confused "View-Only Access" & "Document Preparation Access" ........................................................................................ 3

        1. "View-Only Access" Limits MSYB to Only View, Print and Conduct Legal Review of Documents for Certain State Loan Packages ................. 3

        2. "Document Preparation Access" Provides All Necessary Tools to Generate a Loan Package ......................................................................... 3

    B. GreenPoint Has Failed to Disclose Its Relationship with MSYB .......................... 4

        1. GreenPoint Has Consistently Evaded Relevant Discovery Requests ......... 4

        2. GreenPoint's 30(b)(6) Representative Leslie Gibin Testified that MSYB had "View-Only Access." ....................................................................... 4

    C. Plaintiffs First Learned that GreenPoint Sub-Licensed Plaintiffs' System to MSYB at the 30(b)(6) Deposition Taken on November 14, 2006 ....................... 5

    D. GreenPoint's "Evidence" That Plaintiffs Had "Prior Knowledge" Fails .............. 5

        1. GreenPoint Has Misrepresented Leslie Gibin's Testimony ....................... 5

        2. Koreen's Testimony Is Irrelevant .............................................................. 6

        3. The Confidentiality Agreement Does Not Indicate MSYB's Level of Access ....................................................................................................... 6

        4. Jim Manion Repeatedly Represented that MSYB had "View-Only Access" .................................................................................................... 7

        5. Interrogatory No. 3 Does Not Show that Plaintiffs Had Knowledge ........ 8

II. Defendant Has Not Been Prejudiced by Plaintiffs' Three-Page Supplemental Expert Report ................................................................................................................................ 9

III. Plaintiffs' Three-Page Supplemental Report Should Not Be Struck for Timeliness Concerns .............................................................................................................................. 10

|      | A. | The Requirements of Rule 16(b) Have Been Met to Extend the Original Expert Deadline ................................................................................................................. 10 |
|------|----|---|
|      | B. | In the Alternative, Plaintiffs Request that this Court Deem Plaintiffs' Supplemental Expert Report to Be Timely Submitted Under Fed. R. Civ. P. 26(e)(1) ............................................................................................. 11 |
| IV.  | Requested Relief............................................................................................................... 12 | |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ackerman v. Keith*, 2007 WL 2683792 (D. Colo., Sept. 6, 2007) .................................................. 10

*Axcess Broadcast Services, Inc. v. Donnini Films*, 2006 WL 1042334 (N.D. TX, April 19, 2006) ................................................................................................................................ 10

*Bowers v. American Hear Association*, 513 F. Supp. 2d 1364 (N.D. Ga. 2007) ........................ 10

*Brennan's Inc. v. Dickie Brennan & Company Inc.*, 376 F.3d 356 (5th Cir. 2004) .................... 12

*IGT v. Alliance Gaming Corporation*, 2007 WL 2429147 (D. Nev., Aug. 20, 2007) ................ 10

*Jochims v. Isuzu Motors, Ltd.*, 144 F.R.D. 350 (S.D. Iowa 1992) .............................................. 12

*Luma Corporation v. Stryker Corporation*, 226 F.R.D. 536 (S.D.W.Va. 2005) ........................ 12

*Pumpco, Inc. v. Schenker International, Inc.*, 204 F.R.D. 667 (D. Colo., 2001) ........................ 10

*Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655 (N.D. Ga., 2001) ............................ 11

*Stanerson v. Colorado Boulevard Motors*, 2006 WL. 3190520 (D. Colo., Nov. 2, 2006) .......... 10

*Trimble Navigation Ltd. v. RHS, Inc.*, 2007 WL. 2727164(N.D. Cal. Sept. 17, 2007) ............ 9, 10

*Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 49 F. Supp. 2d 456 (D.Md. 1999) ............................ 12

## FEDERAL RULES & STATUTES

Fed. R. Civ. P. 26(e)(1) ............................................................................................................... 11

Fed. R. Civ. P. 15(a) .................................................................................................................... 10

Fed. R. Civ. P 16(b) ..................................................................................................................... 10

15 U.S.C. § 6801(a) ....................................................................................................................... 6

## OTHER

OCC Bulletin 2001-47 *Third Party Relationships Risk Management Principles* (November 1, 2001) ......................................................................................................................... 6

OTS Thrift Bulletin 82a *Third Party Arrangements* (September 1, 2004) ................................... 7

3 James Wm. Moore et. al., § 16.14[1][b] (3d ed. 2003)................................................................10

# PLAINTIFFS THE COMPLIANCE SOURCE AND DIGITAL DOCS, INC.'S REPONSE TO GREENPOINT MORTGAGE FUNDING INC.'S MOTION TO STRIKE THE SUPPLEMENTAL REPORT OF PLAINTIFFS' EXPERT KEITH R. UGONE

On November 14, 2007, The Compliance Source, Inc. and Digital Docs, Inc., ("Plaintiffs"), learned *for the very first time* of Greenpoint Mortgage Funding Inc.'s ("Defendant" or "GreenPoint") unauthorized sublicense of Plaintiffs' intellectual property to McGlinchey Stafford and Youngblood & Bendalin ("MSYB") in violation of the licensing agreement. Plaintiffs learned of Greenpoint's unauthorized disclosure to MSYB through the 30(b)(6) deposition of MSYB's corporate representative, Mr. Ronald Bendalin. Upon learning this information, Plaintiffs immediately filed (1) Keith Ugone's supplemental three-page report assessing damages suffered by Plaintiffs related to GreenPoint's unauthorized sublicense of Plaintiffs' intellectual property, (2) their motion for leave to file a third amended complaint, and (3) their amended Rule 26 disclosures.

Defendants argue that Plaintiffs knew they had unlawfully sublicensed their software to MSYB, and thus, leave should not be granted to permit sublicensing allegations and damages at this juncture. Meanwhile, Defendant's corporate representative described MSYB's access as "View Only Access" and essentially stated that no sublicense had been provided. Now, despite Defendant's testimony, it argues that Plaintiffs' supplemental expert report adding damages related to the sublicensing allegations should be denied, based essentially on the argument that Plaintiffs should have known that Greenpoint's corporate representative was lying under oath. This is nonsensical.

During this time period, Plaintiffs agreed to Defendant's request for a twenty-eight (28) day extension to file its expert reports, thus extending Defendants' deadline from December 3, 2007 to December 31, 2007. Plaintiffs filed their Supplemental Expert Report on November 30,

2007. Given Defendant's new deadline, Defendants had thirty-one days to respond to Plaintiffs' supplemental expert report and fifty-nine days to response to Plaintiffs' damages as pleaded in its original expert report. *Defendant fails to mention the undisputed fact that Plaintiffs' agreed to Defendants' request to also file their expert report four weeks from the original deadline*. Defendant has suffered no prejudice, and in fact, has had more time to issue its expert reports than what is normally allowed. Indeed, the only party that has been prejudiced in this case are the Plaintiffs.

Leave should be granted in this case. Plaintiffs' supplemental expert report was filed sufficiently in advance of Defendants' deadlines and the trial date. Further, this Court should not countenance Greenpoint's gamesmanship. To deny Plaintiff's supplemental expert report based on their reliance upon Greenpoint's testimony would be to permit GreenPoint to benefit from its wrongdoing. Because Plaintiffs filed their amended supplemental expert report within two weeks of MSYB's deposition at a time when Defendant's expert still had at least thirty days to review the supplemental report, this Court should grant leave to allow Plaintiffs' supplemental expert report.

### I. Plaintiffs' Supplemental Expert Report Should Be Allowed Because Defendant Intentionally Withheld Critical Information Regarding its Relationship with MSYB.

The three-page supplemental report that is at issue in this motion provides information related to damages Plaintiffs are seeking regarding GreenPoint's unauthorized sublicense to MSYB of Plaintiffs' intellectual property. Plaintiffs first learned of GreenPoint's unauthorized sublicense to MSYB on November 14, 2007, which was two weeks after Plaintiffs' expert deadline. Nonetheless, Plaintiffs' three-page supplemental expert report was filed on November 30, 2007, more than thirty-days prior to Defendants' deadline.

A.   **Defendants Have Intentionally Confused "View-Only Access" & "Document Preparation Access."**

Defendant argues that Plaintiffs knew that MSYB had "access" to their proprietary intellectual property and thus, Plaintiffs' motion for leave is untimely. The term "access" cannot be generalized in this manner because Defendants have intentionally omitted the distinction between "View-Only Access" and "Document Preparation Access." This distinction is critical because "View-Only Access" does not constitute a breach of the parties' Licensing Agreement, but "Document Preparation Access" does.

1.   **"View-Only Access" Limits MSYB to Only View, Print and Conduct a Legal Review of Documents For Certain State Loan Packages.**

"View-Only Access" provides very limited access to Plaintiffs' proprietary intellectual property. Specifically, "View-Only Access" provides MSYB access to Plaintiffs' licensed proprietary intellectual property to view and print documents in order to assist GreenPoint to perform necessary legal review of that document prior to its submission to a title company.[1] "View-Only" provides more narrow and limited access than "Document Preparation Access".

2.   **"Document Preparation Access" Provides All Necessary Tools to Generate Loan Packages.**

"Document Preparation Access" allows an entity to actively participate in all areas of the document preparation process. Specifically, this access allows: (i) data input; (ii) access to lists of all documents for all loan packages; (iii) access to all legal and form updates provided by Plaintiffs; (iv) access to loan documents and packages from all fifty states; (v) access to all forms, technology, and software to produce a loan package in any state; (vi) access to run test loans and perform testing; (vii) access to computer code and programming; (viii) access to file

---

[1]   Peirson Deposition, at 167:19-169:22, attached hereto as Exhibit A; Peirson Declaration attached hereto as Exh. B.

127742_1                                                3

structures and field definitions; (ix) access to software and data methodologies utilized to fill out forms; and, (x) access to email documents to itself or other entities. Plaintiffs grant "Document Preparation Access" only through the use of a sublicense arrangement that includes a fee per every loan documented on the system. GreenPoint deprived Plaintiffs from these fees by sublicensing Plaintiffs' system to MSYB.[2] By illegally providing access to MSYB, GreenPoint provided a direct competitor all necessary tools to reverse engineer Plaintiffs' system.[3]

**B.   GreenPoint Has Failed to Disclose Its Relationship with MSYB.**

**1.   GreenPoint Has Consistently Evaded Relevant Discovery Requests.**

Plaintiffs diligently and repeatedly sought discovery regarding the relationship between GreenPoint and MSYB. Plaintiffs' September 19, 2006 Interrogatories specifically asked for the identification of third parties who had access to Plaintiffs intellectual property and the extent of that access.[4] In its Response, GreenPoint failed to mention MSYB or the extent of access that had been given to MSYB.[5] Plaintiffs served four sets of requests for production, dated September 19, 2006,[6] September 6, 2007,[7] September 6, 2007,[8] and November 21, 2007,[9] which each included requests regarding GreenPoint's relationship with MSYB. Nonetheless, GreenPoint repeatedly evaded disclosing its relationship with MSYB.

**2.   GreenPoint's 30(b)(6) Representative Leslie Gibin Testified that MSYB had "View Only Access."**

---

[2]   Peirson Deposition, at 166:11-167:18, attached hereto as Exh. C; Exh. B.
[3]   Peirson Deposition, at 172:13-173:13, attached hereto as Exh. D; Exh. B.
[4]   Plaintiffs' First Set of Interrogatories, Interrogatory No. 6, attached hereto as Exh. E, at 14.
[5]   Defendant GreenPoint's Response to Interrogatory No. 6, attached hereto as Exh. F, at 12-14.
[6]   Exh. G First Set of Requests for Production, Request No. 9, at 16; Response to Request No. 9 at Exh. H, at 19.
[7]   Exh. I Second Set of Requests for Production, at Req. Nos. 15-19, at pg. 9.; Resp. to Req. Nos. 15-19 at Exh. J, at pgs. 14-19.
[8]   Exh K Third Set of Requests for Production, Req. Nos. 3, 4, 7 at pgs. 7-8; Resp to Req. Nos. 3, 4, 7, at Exh. L pgs. 8-10.
[9]   Exh. M Fourth Set of Requests for Production, Rep. Nos. 1-10; Exh. N, Resp to Req. Nos. 1-10.

On August 30, 2007, GreenPoint's 30(b)(6) designated corporate representative, Leslie Gibin, testified that MSYB only had "View-Only Access" to Plaintiff's system. She stated that MSYB's access to Plaintiffs' system only allowed them to print documents. She also testified that only GreenPoint employees, and not MSYB employees, would input all data into the system. Finally, she never indicated that MSYB was given access to documents pertaining to loans outside of Texas.[10] The level of access described by Gibin, is consistent with "View-Only Access."

### C. Plaintiffs' First Learned that GreenPoint Sub-Licensed Plaintiff's System to MSYB at the 30(b)(6) Deposition Taken on November 14, 2006.

On November 14, 2007, MYSB's 30(b)(6) representative, Mr. Ronald Bendalin, testified that MSYB was given "Document Preparation Access."[11] In describing the methodologies used to prepare loan documents for GreenPoint, Bendalin stated that MSYB "would extract data from [the system]" and also "enter that data into the Empower system" to prepare loan documents. Bendalin further testified that he knew that Empower was using software developed by Digital Docs, Inc. Finally, Bendalin clarified that it was MSYB, *and not GreenPoint*, that would enter basic loan information from GreenPoint into the system to prepare and generate loan documents for GreenPoint.[12] This testimony conclusively proves that GreenPoint allowed MSYB "Document Preparation Access" to Plaintiffs' system.

### D. GreenPoint's "Evidence" That Plaintiffs Had "Prior Knowledge" Fails.

None of the evidence provided by GreenPoint shows that Plaintiffs knew that MSYB had "document preparation access" to the system. GreenPoint argues that Plaintiffs knew that

---

[10] August 30, 2007 30(b)(6) Deposition of GreenPoint, Leslie Gibin, at 55:20-56:19, Exh. O.
[11] November 14, 2007 30(b)(6) Deposition of MSYB, Ronald Bendalin, at 29:2-8, Exh. P.
[12] Exh. P, at 33:14-34:13.

127742_1                                                    5

MSYB had "use of GreenPoint's database system," but this does not equate to "document preparation access", which constitutes a violation of the parties' Licensing Agreement.

### 1. GreenPoint's Has Misrepresented Leslie Gibin's Testimony.

<u>The portion selected by GreenPoint, (54:4-55:16) is a cherry-picked deposition excerpt that is a blatant misrepresentation of Ms. Gibin's testimony under oath.</u> Immediately after the section cited by GreenPoint, Ms. Gibin *volunteered on her own accord* to clarify her earlier remarks, and testified that MSYB only had "View Only Access."[13]

### 2. Koreen's Testimony Is Irrelevant.[14]

Defendant's attached Exhibit J has no bearing to the issue at hand as it deals with VMP gap analysis which to Plaintiffs' knowledge does not involve MSYB. Referenced Exhibit J (82:9-20) is inadequate to prove GreenPoint's position because contains no indicia that MSYB had access at a level that exceeded "View-Only." Moreover, and perhaps more importantly, Kim Koreen's 30(b)(6) testimony was superceded and clarified by Leslie Gibin's 30(b)(6) testimony, who clarified for the record, once and for all, that MSYB had "View Only Access"[15]

### 3. The Confidentiality Agreement Does Not Indicate MSYB's Level of Access.

Defendant's Exhibit E, a Confidentiality Agreement dated in October 2003, is irrelevant and does not prove that Plaintiffs knew that MSYB had "Document Preparation Access." First, Plaintiffs are not a party to this contract. Second, Defendants' cited sections of the contract do not support its position. Sections 2 & 5 merely contain boilerplate language regarding MSYB's responsibility not to disclose any confidential information regarding GreenPoint to a third party. Not one of the items contained in this list for Section 5 referenced Plaintiffs' proprietary intellectual property. Moreover, if MSYB had more than "View Only Access," then GreenPoint

---

[13]   Exh. O.
[14]   GreenPoint cites 82:9-20 (Referenced Exhibit J), but attached in its exhibit 89:1-25 (Attached Exhibit J).
[15]   Deposition Testimony of Leslie Gibin at 55:50-56:19, attached hereto as Exh. O.

should have entered into a more detailed contractual agreement with MSYB than the contract in Exhibit E.[16] Hence, the Confidentiality Agreement does not show that Plaintiffs should have known that MSYB had been given "Document Preparation Access."

### 4.   Jim Manion Repeatedly Represented that MSYB Had "View-Only Access."

GreenPoint suggests that Jim Manion, GreenPoint's General Counsel, knew about the potential sublicensing issues between GreenPoint and MSYB. In addition, GreenPoint argues that Manion also shared his knowledge about the potential sublicensing issues with Plaintiffs once he became employed with Digital Docs, Inc. on January 1, 2004. Neither assertion is supported by any evidence.

---

[16] When a third party provider has significant access, such as "Document Preparation Access" to a bank's system, federal law requires comprehensive contractual arrangements between the parties, not a mere confidentiality agreement. 15 U.S.C. § 6801(a) (attached hereto as Exh. Q) ("each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information"); OCC Bulletin 2001-47 *Third Party Relationships Risk Management Principles* (November 1, 2001) (attached hereto as Exh. R.) ("The following topics should normally be considered when entering into a binding contract or agreement: scope of arrangement; performance measures or benchmark; responsibilities for providing and receiving information; the right to audit; cost and compensation; ownership and license; confidentiality and security; business resumption and contingency plans; indemnification; insurance; dispute resolution; limits on liability; default and termination; customer complaints; OCC Supervision.*); See Also* OTS Thrift Bulletin 82a *Third Party Arrangements* (September 1, 2004) (attached hereto as Exh. S) ("A written contract that states the duties, obligations, contingencies, and responsibilities of the parties and ensures that third parties maintain adequate internal controls over activities...As discussed in detail below, a written contract is essential for both parties to the arrangement. The contract should clearly state the rights and responsibilities of each party... A contract should typically include the following terms: The scope of the arrangement, including types of service and activities, performance standards, warranties, and penalties for lack of performance... Insurance, disaster recovery capabilities, and other contingency measures that the third party maintains...Ownership and access...Provisions for your access to external audits, internal control reports, if available, or other reviews of and reports on the third party's operations and financial condition...Compliance with any applicable regulatory requirements, and access to information and operations by OTS and other regulators...Provisions for handling disputes, contract changes, contract default and termination, assignment of the contract, and indemnification...Costs and compensation...Confidentiality and security.") A confidentiality agreement is the type of contract that only indicates "View-Only Access" and is not consistent with the obligations of the bank's board of directors and management. *See Id.* ("A bank's use of third parties to achieve its strategic goals does not diminish the responsibility of the board of directors and management to ensure that the third-party activity is conducted in a safe and sound manner and in compliance with applicable laws.") Hence, this confidentiality agreement does not confer notice of "Document Preparation Access" because it lacks the sufficient legal elements. The use of a two-page confidentiality agreement to facilitate third-party access to Greenpoint's system is excessive risk-taking that violates standard banking practices. *See Id.* ("The OCC expects bank management to engage in a rigorous analytical process to identify, measure, monitor, and establish controls to manage the risks associated with third-party relationships and, as with all other risks, to avoid excessive risk-taking that may threaten the safety and soundness of a national bank and unsafe and unsound banking practice.")

The evidence shows that Jim Manion actually assured Plaintiffs on multiple occasions that MSYB only had "View-Only Access" to Plaintiffs' intellectual property. For example, Manion repeatedly assured Plaintiffs that he would not tolerate any theft of Plaintiffs' intellectual property.[17] In addition, Manion assured Plaintiffs that their interests "are aligned" with respect to protecting Plaintiff's intellectual property to unauthorized disclosure.[18] Finally, on August 20, 2003, Manion assured Chris Peirson in person that MSYB had "View Only Access" and that GreenPoint would not engage in any activity that would breach the Licensing Agreement.[19] Peirson believed GreenPoint's multiple representations that MSYB had "View Only Access."

Finally, Defendant's argument is nonsensical. GreenPoint argues that because Digital Docs, Inc. hired Jim Manion, Plaintiffs knew about the true relationship between GreenPoint and MSYB because all knowledge Jim Manion acquired as General Counsel of GreenPoint would have necessarily been imputed to Plaintiffs. In raising this argument, GreenPoint necessarily assumes that Jim Manion breached his duties of loyalty and confidentiality owed to GreenPoint by revealing GreenPoint's relationship with MSYB to Plaintiffs. There is no evidence of such a breach occurring, and Defendant fails to cite to any evidence that substantiates this allegation. Moreover, it does not change the fact that GreenPoint issued an unauthorized sublicense to MSYB and concealed this fact from Plaintiffs throughout the entire course of this litigation.

5. **Interrogatory No. 3 Does Not Show that Plaintiffs' Had Knowledge.**

Interrogatory No. 3 discusses the result of Plaintiffs' search of random public property records, which revealed that the Riders on certain documents included Plaintiffs' unique document identifier and bar code. Since these were Texas documents, Plaintiffs' believed MSYB might have been involved in their creation. A review of public property records,

---

[17] August 15, 2003 Email from Jim Manion to C. Peirson and C. Pignuolo, attached hereto as Exhibit T.
[18] August 15, 2003 Email from Jim Manion to C. Peirson and W. Peirson, attached hereto as Exhibit U.
[19] Exh. B.

standing alone, would not indicate to a necessary degree of certainty which entity—GreenPoint or Plaintiffs— that used Plaintiffs' software to create the Riders.[20] Plaintiffs pursued this issue in multiple discovery requests.[21] When GreenPoint repeatedly represented that MSYB had "View Only Access" through its interrogatory responses, responses to production requests, and 30(b)(6) corporate representative testimony, Plaintiffs concluded that GreenPoint must have created the documents.

## II.   Defendant Has Not Been Prejudiced by Plaintiffs' Three-Page Supplemental Expert Report

On November 2, 2007, Plaintiffs filed their expert report. Approximately one week later, Plaintiffs agreed to Defendant's request for a 28-day extension to file its expert reports, thus extending Defendants' deadline from Monday, December 3, 2007 to December 31, 2007. Defendants filed their *unopposed* motion requesting an extension of its expert deadline on or about November 7, 2007,[22] and this Court granted Defendant's *unopposed* request on November 13, 2007.[23] Plaintiffs' filed their Supplemental Expert Report on November 30, 2007. Given Defendant's new deadline, Defendants had thirty-one days to respond to Plaintiffs' supplemental expert report and fifty-nine days to response to Plaintiffs' damages as pleaded in its original expert report. Defendants' motion is premised on the fact that Plaintiffs' supplemental expert report was four weeks after the original deadline, *but fails to mention the undisputed fact that Plaintiffs' agreed to Defendants' request to also file their expert report four weeks from the original deadline*. Defendant has suffered no prejudice because from its receipt of Plaintiffs' supplemental report, it had over thirty days before its expert report was due.

---

[20]   Exh. B.
[21]   Section I.B.1., *supra* at 4.
[22]   Docket No. 96.
[23]   Docket No. 97.

Moreover, GreenPoint will not suffer undue prejudice because the "new allegations" relate to evidence and discovery that is in GreenPoint's possession or control.[24] Adequate time remains until the current trial setting for the Defendant to devise and plan a trial strategy.[25] Plaintiffs filed their supplemental three-page expert report more than thirty days prior to Defendant's expert deadline, two months prior to the Court's discovery cutoff, and six months prior to the Court's trial setting. Courts have also routinely granted motions to extend time where the granting of a discovery extension would not affect the trial setting.[26]

### III. Plaintiffs Three-Page Supplemental Expert Report Should Not Be Struck For Timeliness Concerns

#### A. The Requirements of Rule 16(b) Have Been Met to Extend the Original Expert Deadline.[27]

Defendant suggests that Plaintiffs have not demonstrated sufficient "good cause" to allow Plaintiffs' three-page supplemental expert report. Good cause has <u>routinely been found to exist</u> when the evidence needed by a plaintiff to prove an amended claim is first discovered after the deadline has already expired.[28] Here, the three-page supplemental expert report could not have been submitted in accordance with Plaintiffs' November 2, 2007 deadline, because the evidence needed to substantiate the underlying claim was not discovered until November 14, 2007.

The damages described in Plaintiffs' three-page supplemental report are highly important to the instant litigation. Defendant's unauthorized sublicense to MSYB constitutes a breach of

---

[24] *Trimble Navigation Ltd. v. RHS, Inc.*, 2007 WL 2727164 at *11 (N.D. Cal., September 17, 2007).
[25] *Stanerson v. Colorado Boulevard Motors*, 2006 WL 3190520 at *3 (D. Colo., Nov. 2, 2006) (allowing amendment when party still had sixty days of discovery.).
[26] *See e.g. Axcess Broadcast Services, Inc.*, 2006 WL 1042334 at *3 (N.D. TX April 19, 2006).
[27] Plaintiffs have also filed with the court its motion to extend its expert deadlines or in the alternative, motion to deem the supplement report as valid under Rule 26(e)(1).
[28] Fed. R. Civ. P. 15(a), 16(b).; *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668-69 (D. Colo., 2001); *Ackerman v. Keith*, 2007 WL 2683792 at *2 (D. Colo., Sept. 6, 2007); *Stanerson v. Colorado Boulevard Motors*, 2006 WL 3190520 at *2(D. Colo., Nov. 2, 2006); *Bowers v. Am. Hear Assoc.*, 513 F.Supp.2d 1364, 1368 (N.D. Ga. 2007); *IGT v. Alliance Gaming Corp.*, 2007 WL 2429147 *5-6 (D. Nev., Aug. 20, 2007); *See Trimble Navigation Ltd. v. RHS, Inc.*, 2007 WL 2727164 at *11 (N.D. Cal., September 17, 2007); 3 James Wm. Moore et. al., § 16.14[1][b] (3d ed. 2003).

the parties' Licensing Agreement. As a result of Defendants' actions, MSYB, a competitor in the marketplace, had access to Plaintiffs' proprietary intellectual property for the production of loan document packages in all fifty states. Furthermore, Plaintiffs were denied the revenue that they should have received had a proper third-party agreement been reached between GreenPoint, MSYB, and Plaintiffs. Plaintiffs estimate that this figure may be as high as $10 million.

**B.    In the Alternative, Plaintiffs Request that this Court Deem Plaintiffs Supplemental Expert Report to Be Timely Submitted Under Fed. R. Civ. P. 26(e)(1).**

Fed. R. Civ. P. 26(e)(1) states that a party is under a duty to supplement at appropriate intervals its disclosures when a party learns in some material respect that the information "is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." A party must supplement an expert report by the deadlines provided in the scheduling order or by the time the party's pretrial disclosures are made, which in this case is May 23, 2008.[29] There is no court order governing the date by which the parties must supplement disclosures under Rule 26, therefore, the applicable deadline is May 23, 2008. Accordingly, Plaintiffs' supplementation of its expert report was timely.

In addition, Plaintiffs' supplemental expert report does precisely what Rule 26(e) requires; it supplements the Plaintiffs' disclosures "to include information thereafter acquired." This continuing duty to supplement disclosures when new information comes to light extends to the Plaintiffs' experts, and any reports produced by those experts.[30] Because new information can be, and often is, discovered throughout the discovery process, courts liberally permit

---

[29]  FED. R. CIV. P. 26(e)(1); *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga., 2001).
[30]  FED. R. CIV. P. 26(e)(1).

supplementation of expert reports that are filed more than thirty days before trial.[31] In this instance, Plaintiffs learned of new evidence that gave rise to a new claim for the first time on November 14, 2007. This information was not included in its original expert report of November 2, 2007 because Defendant concealed this evidence from Plaintiffs and it was discovered for the first time after the deadline. Plaintiffs are under a duty to supplement its expert report, and the court should permit Plaintiffs to comply with that duty by denying Defendant's motion to strike that supplement. Moreover, this Court should not reward Defendant's gamesmanship for deliberately hiding important information regarding this litigation.

## IV.   Requested Relief

Plaintiffs respectfully request that Defendants' Motion to Strike the Plaintiffs' Supplemental Expert Report be denied.

>       Respectfully submitted,
>
>       DIAMOND MCCARTHY TAYLOR
>       FINLEY & LEE LLP
>
>       By: /s/ Julie N. Searle

---

[31] *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 374-376 (5th Cir. 2004)(permitting supplemental expert report, where the report was thought to be complete when filed, but later required amendment to include new data); *Luma Co. v. Stryker Co.*, 226 F.R.D. 536, 544, 545 (S.D.W.Va. 2005)(holding that absent a showing of incurable surprise or prejudice, additional expert reports, even if more than merely supplemental, should be permitted); *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 49 F.Supp.2d 456, 460-461 (D.Md. 1999)(permitting supplemental expert report containing two new opinions six months after an expert's original report was filed because the parties were still several months from trial); *Jochims v. Isuzu Motors, Ltd.*, 144 F.R.D. 350, 353-54 (S.D. Iowa 1992)(permitting supplemental expert disclosure because new evidence came to light just before the discovery deadline, and the new information was critical to the plaintiff's case).

<table>
<tr><td>

Julie N. Searle  
State Bar No. 24037162  
Two Houston Center  
909 Fannin Street, Suite 1500  
Houston, TX 77010  
(713) 333-5100  
(713) 333-5199 (fax)

</td><td>

William T. Reid, IV  
State Bar No. 00788817  
P. Jason Collins  
State Bar No. 24040711  
6504 Bridgepoint Parkway, Suite 400  
Austin, Texas 78730  
(512) 617-5200  
(512) 617-5299 (fax)

</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via e-mail or certified mail this 10th day of January 2008, to the following counsel of record.

Herbert J. Hammond  
Gerald W. Roberts  
Thompson & Knight, L.L.P.  
1700 Pacific Avenue  
Dallas, Texas 75201  
hhammond@tklaw.com  
gerald.roberts@tklaw.com

/s/ Julie N. Searle  
Julie N. Searle